## In re Pennsylvania Trust Company

*S. E.* and *J. W. Bertolet,* for petitioners.

*Dawson H. Muth,* county solicitor, for prothonotary.

SCHAEFFER, P. J., April 15, 1940.—Upon the petition of the liquidating trustees of the Pennsylvania Trust Company, a rule was issued upon the prothonotary to have him show cause why he should not accept petitioners' accounts without charging a fee for transcribing them. Petitioners, during the course of liquidating and distributing the assets of the Pennsylvania Trust Company, have filed several large accounts and will in the future file still others. They have paid a filing fee; but, relying upon his interpretation of the Act of April 25, 1850, P. L. 569, sec. 19, 17 PS §1919, the prothonotary has made demand for the payment of a recording or tran-

scribing fee of $13.50 for the first page and $2 for each subsequent page. The amount of the fee presently in dispute is $5,944.

The several accounts filed are original typewritten copies upon white paper, which have been bound into several volumes each of substantial cloth binding. Petitioners also have tendered to the prothonotary duplicate copies of the account in books of identical binding.

The question is whether or not under the law the prothonotary is bound again to transcribe these accounts. For if the law so requires the cost must, of course, be borne by petitioners.

The Act of 1850, supra, sec. 19, provides that:

"It shall . . . be the duty of the prothonotaries . . . to record, in a book or books to be procured for that purpose, all accounts of assignees, trustees, sequestrators and committees . . .".

Unquestionably petitioners are trustees. Although the duties and functions of the petitioners are precisely those of the Secretary of Banking of the Commonwealth when the latter has taken possession of the business and property of a trust company under the Banking Act, we cannot hold because of the fact that the Secretary's accounts need not be recorded by the prothonotary (In re Jefferson Title & Trust Co., 17 D. & C. 170; Secretary of Banking's Account, Citizens Bank & Trust Co., 24 Del. Co. 1) that the account before us need not be. For the act does not contain the word "receivers," but does include "trustees."

We must, however, consider what the act means by the words "to record, in a book or books to be procured for that purpose." As Judge Stern points out in the Jefferson Trust Company case:

"The act is what might be called a technical one, in that it provides for the recording of certain documents in the prothonotary's office, and, therefore, would invoke the interest only of lawyers and of the prothonotary and not that of laymen. Of course, such recording is not

similar to that in the recorder of deeds office, since the object of the recording by the prothonotary is not to give notice to any parties, but presumably is merely the better to preserve the record of such documents for inspection by parties in interest."

And it must be remembered that in 1850, when the act was passed, the only methods of making a record in any office such as the prothonotary's were by writing by hand and, conceivably, by copy-press or by printing. Typewriting had not as yet been invented, nor were carbon papers in use. Accounts were and are in general matters of a few, or a few score, pages in perishable paper covers and are easily lost, mislaid, or carried away. Mere prudence dictates that accounts in this form be transcribed into a book to insure their preservation. But in our case the accounts are huge, embracing several thousand pages; they are bound in substantial covers and petitioners tender duplicate copies similarly bound. Under these circumstances, we are justified in declaring that the prothonotary complies with the requirements of the act by filing the original and duplicate bound copies of these accounts. By so doing, he adopts these bound volumes as books of record in his office. It is immaterial that the transcription has been done by petitioners' clerks rather than the prothonotary's clerks; the important matter is the permanence and accuracy of the record. To require the further copying of these multitudinous accounts would be useless and improvident. Under the authority vested in the judges of the court of common pleas by the Act of June 17, 1839, P. L. 676, sec. 1, 17 PS §1956, after an inspection of the bound volumes of petitioners' account now on file and of the duplicate bound volumes tendered as a further record of the account, we must conclude that they together constitute a compliance by the prothonotary with the requirements of the law. They are books such "as the law contemplates" under the circumstances here existing.

And now, to wit, April 15, 1940, the rule to show cause is made absolute.